UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

YETI COOLERS, LLC

     Plaintiff,

vs.

HOME DEPOT U.S.A., INC.,

TAKEYA USA CORPORATION,

     Defendants.

Case No.:  1:17-cv-00342

---

## DEFENDANT TAKEYA USA CORPORATION'S
## REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS

---

## I.
## INTRODUCTION

In its Response opposing Takeya USA Corporation's ("Takeya") Motion to Dismiss, Plaintiff YETI Coolers, LLC's ("YETI") ***does not dispute*** the significant differences in the shape and permanent markings of its Rambler™ 30 oz. tumbler as compared with Takeya's 30 oz. tumbler in the side-by-side photograph below:

**Takeya Shape Differences**

*Upper portion is narrower*

*Taper curve begins at higher portion of tumbler*

*Lower portion of tumbler is longer*

*"Takeya" and "30" (oz.) stamped on front of tumbler*



**YETI Shape Differences**

*Upper portion is wider & longer*

*Taper curve begins at lower portion of tumbler*

*Lower portion of tumbler is shorter*

*"YETI" embossed on tumbler in raised letters*

**DEFENDANT TAKEYA USA CORPORATION'S REPLY IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS**

2616934v.1

YETI attempted to obscure these obvious details by showing *individual, rear-view* photographs of the Rambler™ tumblers and the Takeya tumblers on separate pages of the Complaint.  Complaint, Doc. 1, at ¶¶ 11, 13, 17.  YETI argued in its Response opposing the Motion to Dismiss that consumers might not see the *permanently* stamped or embossed brand names at the bottom of the tumblers in some advertisements for the drinkware.   YETI Response ("Response"), Doc. 21 at p. 4.

In making this argument, YETI showed photographs of a clear Takeya tumbler lid, which lacks any markings:



Response at p. 4.

However, YETI disingenuously omitted photographs in its Response of its own tumbler lids for the Court's side-by-side comparison with the Takeya lids.  Here's why: **_All_** of the lids to YETI's tumblers are prominently embossed with "YETI" in bold letters, which can be easily seen by consumers shopping for insulated drinkware if the embossed or stamped brand names at the bottom of the tumblers are not visible.



Screen shot from YETI.com. *See* Motion, Ex. 1, Doc. 13-1, p. 6.

**DEFENDANT TAKEYA USA CORPORATION'S REPLY IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

The primary premise of YETI's Response opposing Takeya's Motion to Dismiss is that the Court previously denied motions to dismiss filed by tumbler vendors in two other lawsuits. So by extension, YETI argues, the Court should assume there is no basis to grant Takeya's Motion. YETI Response, Doc. 21 ("Response") at p. 1. YETI cites to *YETI Coolers, LLC v. Magnum Solace, LLC*, No. 1:16-cv-00663-RP, Doc. 33 ("*MAGNUM* ORDER") and *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-cv-00578, Doc. 28 ("*IMAGEN* ORDER"). *Id.* However, YETI's reliance on these cases lacks merit—obvious differences with Takeya's pending Motion were omitted from YETI's Response. Moreover, YETI erroneously presumes that its claimed trade dress description, in cases with differently styled drinkware products, provides adequate notice to Takeya of infringement—*even though YETI has never established that it has a defined, protectable trade dress*. For the following reasons, the facts and findings of the Court in the *Magnum* Action and the *Imagen* Action are distinguishable from the Motion to Dismiss filed by Takeya.

## II.
## THE COURT'S FINDINGS IN THE *MAGNUM* ORDER ARE DISTINGUISHABLE AND SHOULD NOT BE A BASIS TO DENY TAKEYA'S MOTION TO DISMISS

To state a claim for trade dress infringement, a plaintiff must sufficiently allege facts showing: (1) nonfunctionality, (2) distinctiveness, either inherent or acquired through secondary meaning, and (3) a likelihood of confusion by consumers through the infringing use. *See Taco Cabana Int'l, Inc. v Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991) *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414–15 (6th Cir. 2006). The third factor—likelihood of confusion—is where the Court drew an important distinction in its *Magnum* Order.

Unlike the YETI and Takeya tumblers, the Magnum tumblers lacked a permanently stamped or embossed name or logo prominently placed on the tumblers' exterior. A paper band around the Magnum drinkware, displaying "Magnum Steel" and a man hammering an anvil, was removable after purchase.



Magnum Reply, Doc. 13 at p. 6.

The Court concluded:

> In the cases cited by [Magnum], however, the labeling at issue was permanently and prominently affixed to the allegedly infringing product—other words, it was readily observable as part of the product, not just the product's packaging. *See, e.g., Sno-Wizard Mfg., Inc. v. Eisemann Products Co.*, 791 F.2d 423 (5th Cir. 1986) (finding that an alleged likelihood of confusion was belied by the use of the defendant's name on an ice-shaving machine); *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253 (5th Cir. 1989) (finding that the prominent use of the defendant's name and trademark on its medical cart "greatly reduced" the potential for customer confusion). Here, Magnum's trademark and unique design element appear only on (1) the removable label placed on the product for marketing and sale purposes; and (2) the bottom of the drinkware. ***Thus, unlike the cases on which Magnum relies, Magnum's trademark would no longer be affixed to a regularly visible part of the product after the customer used (and presumably, washed) the product for the first time***. The Fifth Circuit has indicated that this post-sale confusion may be actionable. (citation omitted).

*Magnum* Order, Doc. 33 at p. 11 (emphasis added).

---

**DEFENDANT TAKEYA USA CORPORATION'S REPLY IN SUPPORT OF**
**RULE 12(B)(6) MOTION TO DISMISS**

Under the Court's analysis and holding in *Magnum*, YETI cannot plausibly plead likelihood of confusion of its claimed trade dress in the pending action because all exteriors of Takeya's drinkware are prominently stamped with "30 [oz] Takeya" or "20 [oz] Takeya" on the lower third of the tumbler; whereas, the YETI drinkware is embossed with "YETI" on both the exterior of the tumbler and on the lid.[1]   And, the tumblers are heavily promoted on the companies' websites and elsewhere on the internet with the brand names featured in photographs.[2]  *See photographs in* Motion, Ex. 1, Doc. 13-1; Ex. 2, Doc. 13-2; Response, Ex. 2, Doc. 21-4 at pp. 3, 5, 8, 10, 15, 20-21, 29-30, 38-40.

Furthermore, in *Magnum*, the defendant did not demonstrate any obvious permanent branding differences between its drinkware and YETI's drinkware. The Court held that YETI's photographs, working in combination with YETI's vague list of elements, created sufficient notice of the alleged trade dress.  *Magnum* Order, pp. 5-6.  Here, even when YETI's recycled trade dress elements are taken as true and viewed in combination with the photographs in the Takeya Complaint, there are significant, undisputed differences between the Takeya tumblers and the YETI tumblers *that on their face* make a reasonable inference of liability for misconduct

---

[1] In the *Magnum* Order, the Court observed that "the Fifth Circuit has indicated that likelihood of confusion may exist in some circumstances even when the alleged infringer permanently affixed its logo and word slogan to infringing products."  Doc. 33 at p. 11.  The Court cited to *Board of Supervisors for Louisiana State Univ. Agricultural & Mechanical College v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008), which is also distinguishable from the facts in this case.  In *Smack*, the Fifth Circuit held that the defendant's logo appeared on infringing t-shirts in an inconspicuous space that was only 2.5 inches wide.  By comparison, Takeya's name and the stylized number of ounces prominently appear in the lower third of its tumblers.

[2] YETI asserts in its Response that use of a house mark (such as "YETI" or "Takeya") does not preclude actionable initial interest confusion based on the analogous product designs, even if this confusion is then dissipated by further inspection.  Response, Doc. 21 at p. 20.  However, its citation to *Galvotec Alloys, Inc. v. Gaus Anodes, Int'l, LLC*, No. 13-664, 2014 WL 6805458, at *6 (S.D. Tex. Dec. 2, 2014) for this premise is very distinguishable from this case.  In *Galvotec*, the dispute centered on the defendant's infringing use of the plaintiff's registered "GA" trademark.  The Plaintiff was named "Galvotec Alloys, Inc., and the Defendant was named "GaUS Anodes International, LLC."  Both parties sold anodes for corrosion protection using the "GA" mark, which the court determined was likely to be confusing to customers.  By comparison, strong visual and auditory differences exist between the brand names of "YETI" and "Takeya."

**DEFENDANT TAKEYA USA CORPORATION'S REPLY IN SUPPORT OF**
**RULE 12(B)(6) MOTION TO DISMISS**

2616934v.1

implausible.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Dismissal is therefore warranted

under the analysis of the Court's *Magnum* Order.

### III.
### THE COURT'S FINDINGS IN THE *IMAGEN* ORDER ARE DISTINGUISHABLE AND SHOULD NOT BE A BASIS TO DENY TAKEYA'S MOTION TO DISMISS

The Court's Order in *Imagen* further confirms the vagueness of YETI's claimed trade

dress:

> Having reviewed the elements that, at least in part, make up the
> overall look of Plaintiff's claimed trade dress, ***the Court finds that
> many of them are vague and fail to give notice of what is claimed
> to competitor***. … Plaintiff claims protection for the "curves, tapers,
> and lines," the design of same, and the relationship among them,
> but never identifies which curves, tapers, and lines" it refers to. …
> Is the phrase "appear of design aspects of the [tumblers]"—a
> claimed element of Plaintiff's trade dress—not merely another way
> of saying "the overall look and appearance of the [tumblers]" as
> defined by certain elements of design?

*Imagen* Order, Doc. 28 at p. 7 (emphasis added).

The Court found that the photographs YETI attached to the *Imagen* Complaint

"provide[d] no answers to these questions.  Indeed, certain vague elements of Plaintiff's claimed

trade dress do not appear in the photographs at all."  *Id.*[3]  However, Imagen, like Magnum, did

not demonstrate any permanent branding that differentiated its drinkware from YETI's

drinkware.  And, although the Court concluded that, as to Imagen, some aspects of YETI's trade

dress were sufficiently specific to dodge a motion to dismiss, it remained concerned that "the

balance of Plaintiff's allegations are unclear or overbroad and thus pose an anti-competitive

---

[3] In the Motion to Dismiss, Takeya visually demonstrated just how vague YETI's claimed trade dress elements are by comparing the YETI 20 oz. tumbler to a 20 oz. Starbucks tumbler.  Motion, Doc. 15 at p. 15.  Based upon YETI's description, its trade dress could apply equally to either tumbler, which YETI did not dispute in its Response.  Therefore, YETI's Complaint is facially deficient because it has not provided notice of unique trade dress elements that would put Takeya on notice of its alleged infringement.

**DEFENDANT TAKEYA USA CORPORATION'S REPLY IN SUPPORT OF
RULE 12(B)(6) MOTION TO DISMISS**

2616934v.1

risk." *Id.* The Court warned that "though not dismissing Plaintiff's claims, this Court will require these elements to be more specifically defined in further stages of the litigation." *Id.* at 19.

The important difference between the *Imagen* motion to dismiss and Takeya's Motion to Dismiss is that Imagen provided no evidence of substantial and obvious differences between its tumblers and YETI's tumblers that *on their face* made YETI's trade dress related claims implausible. While, generally, "it is largely up to the plaintiff to define what aspect [of its product] is claimed as protectable trade dress." 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 7:76 (4th ed. 2011), "a product's trade dress is not, in a legal sense, the combination of words which a party uses to describe or represent [its] 'total image.' Rather, the trade dress *is* that image itself, however it may be represented…." *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 545-46 (S.D.N.Y. 2003) (emphasis in original)). YETI cannot be permitted to drag a competitor into expensive, time-consuming litigation by intentionally omitting important, distinguishing features of the competitor's products to the Court at the pleading stage (*e.g.*, "Takeya" stamped on the front of *all* 20 oz. and 30 oz. tumblers, the shape differences of the 30 oz. tumblers, and "YETI" embossed on tumbler lids). Significant differences between the Takeya tumblers and the YETI tumblers are shown in Takeya's Motion to Dismiss—without dispute from YETI. This Court has already expressed concern over the "unclear" and "overbroad" language of YETI's claimed trade dress because it threatens to impermissibly stomp out legitimate competition. *Imagen* Order, Doc. 28 at p. 8. For example, Takeya's Motion showed how YETI failed to articulate any

trade dress elements that uniquely separate the shape of its tumblers from tumblers sold by Starbucks.[4]  Motion, Doc. 15 at pp. 15-16.




YETI 20 oz.                    Starbucks 20 oz.

How then is YETI's Complaint capable of stating a plausible claim for relief against Takeya based upon these "unclear" and "overbroad" elements?  In *Imagen*, the Court held that YETI would be required to "more specifically define" its trade dress elements in "further stages of the litigation" (*Imagen* Order, Doc. 28 at p. 19), but Takeya should not be forced into dubious litigation when it has shown *at the pleading stage* that YETI's claimed trade dress, as described, does not provide notice of any wrongful conduct.  "When trade dress is claimed for the design of a product itself… the courts are especially skeptical, wary of creating 'back-door patents' which could deform competition and tilt the playing filed in favor of the established firm over the brash new-comer." *Imagen O*rder, Doc 28 at p. 5.  The Court's skepticism of YETI's claimed trade dress in *Imagen* should be heightened here because YETI is attempting to shift its burden to factually define its trade dress in the Complaint to making Takeya prove that YETI lacks a

---

[4] As set forth in Takeya's Motion, YETI's choice to use *rear-view* photographs of its 20 oz. tumbler and Takeya's 20 oz. tumbler misrepresents that the respective tumblers are clearly marked with brand names—just like the Starbucks' tumbler shown above.  In the case of Takeya, the 20 oz. tumbler prominently displays the "Takeya" name and "20" [oz] on the bottom third of the tumbler.  The YETI tumbler has the "YETI" name at the bottom and on the lid of the tumbler.  The names and logo are permanent and heavily featured in advertising on the parties' websites and the internet.

**DEFENDANT TAKEYA USA CORPORATION'S REPLY IN SUPPORT OF**
**RULE 12(B)(6) MOTION TO DISMISS**

2616934v.1

protectable trade dress after spending valuable resources on "further stages of the litigation." This is exactly the type of lawsuit manipulation that courts have warned will stifle fair competition and prompts granting Takeya's Motion to Dismiss.

## IV.
## CONCLUSION

YETI acknowledges in its Response that the Court has already given YETI several opportunities to redefine its unregistered trade dress in prior court actions. Response, Doc. 21 at p. 6, fn 6. Nevertheless, in a footnote, YETI informs the Court that its "recent additional refinements [to the claimed trade dress] may not address all [of the Court's] concerns." *Id*. This admission shows that YETI is re-shaping its trade dress to fit claims against each defendant rather than having a defined trade dress that a defendant has infringed upon. For this and the foregoing reasons stated in Takeya's Reply and Memorandum, Takeya respectfully requests that its Motion to Dismiss be granted with prejudice.

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By: */s/ Valeri Williams*
E. Stratton Horres, Jr.
State Bar No. 10011800
Email: stratton.horres@wilsonelser.com
Valeri C. Williams
State Bar No. 24058797
Email: Valeri.Williams@wilsonelser.com
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202
(214) 698-8000 (Telephone)
(214) 698-1101 (Facsimile)

**ATTORNEYS FOR DEFENDANT
TAKEYA USA CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June 2017, a true and correct copy of the foregoing instrument was served on all counsel of record via electronic notice by the CM/ECF filing system.

**BANNER & WITCOFF, LTD.**
Joseph J. Berghammer
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
J. Pieter Van Es
Illinois Bar No. 6210313
pvanes@bannerwitcoff.com
Ten South Wacker Drive, Suite 3000
Chicago, IL  60606-7407
(T) 312-463-5000
(F) 312-463-5001


*/s/ Valeri Williams*