**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| YETI Coolers, LLC, | Case No. 1:17-cv-00342-RP |
| Plaintiff, | The Honorable Robert L. Pitman |
| v. | JURY TRIAL DEMANDED |
| Home Depot U.S.A., Inc., | |
| Takeya USA Corporation, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S**
**MOTION TO STAY**

Plaintiff YETI Coolers, Inc. ("YETI") hereby opposes Defendant Home Depot U.S.A., Inc.'s ("Home Depot") motion to stay the case against Home Depot until resolution of all claims against Home Depot's alleged manufacturers.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 2

III.    THE COURT SHOULD DENY HOME DEPOT'S REQUEST FOR A STAY .......... 2

   A.   Home Depot Fails to Mention and Does Not Meet Its Burden ............................... 2

   B.   The Proposed Stay Would be Inefficient & Hinder Judicial Economy .................. 3

      1.  A Stay Would Require Additional Proceedings Because It Will Not Resolve Home
          Depot's Liability or the Extent of YETI's Relief .................................................... 3

      2.  Patent Law's Customer Suit Exception Does Not Apply Here ........................................ 5

      3.  Home Depot's Proposal Would Likely Require the Court to Resolve Numerous
          Discovery Motions ................................................................................................ 8

   C.   YETI Would Be Prejudiced By a Stay ......................................................... 9

   D.   Denial of a Stay Would not Prejudice Home Depot ............................................... 10

IV.     CONCLUSION ............................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Anascape, Ltd. v. Microsoft Corp.*,
   475 F. Supp. 2d 612 (E.D. Tex. 2007) ................................................................... 3

*Board of Supervisors for Louisiana State University Agricultural and Mechanical College v.*
   *Smack Apparel Co.*, 550 F.3d 465 (5th Cir. 2008) .............................................. 4, 6

*Clark v. Sw. Airlines Co.*,
   No. 16-910, 2017 WL 1435762 (W.D. Tex. Apr. 21, 2017) (Pitman, J.)................ 10

*Clinton v. Jones*, 520 U.S. 681 (1997)................................................................... 3

*Ffrench v. Pricewaterhousecoopers Corp. Fin., LLC*,
   No. 12-291, 2012 WL 1900930,  (S.D. Tex. 2012) ............................................... 3

*Harry and David v. ICG Am., Inc.*,
   No. 08-3106, 2010 WL 3522982 (D. Or. Sept. 7, 2010) ...................................... 4

*Hopple v. Prospect Mortgage, LLC*,
   No. 13-137, 2013 WL 5493004 (W.D. Tex. Oct. 2, 2013) ............................. 2, 10

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
   176 F. Supp. 3d 137 (E.D.N.Y. 2016) ................................................................ 5

*Kaneka Corp. v. Zhejian Medicine Co., Ltd.*,
   No. 11-2389, 2016 WL 6208309 (C.D. Cal. July 6, 2016).............................. 8, 10

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)...................................................................................... 3, 10

*Secure Axcess LLC, v. Nintendo of Am. Inc.*,
   No. 13-32,  2014 WL 986169 (E.D. Tex. Mar. 7, 2014) ...................................... 7

*Strong ex rel. Tidewater, Inc. v. Taylor*,
   No. 11-392, 2013 WL 818893 (E.D. La. Mar. 5, 2013). ..................................... 2

*SuperMedia Inc. v. Bell*,
   No. 12-2034, 2012 WL 5389683 (N.D. Tex. Nov. 2, 2012)............................... 10

*Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*,
   No. 00-1934, 2003 WL 22331254 (N.D. Ga. May 9, 2003)................................. 5

*Ultravision Techs., LLC v. Lamar Adv. Co.*,
   No. 16-374, 2017 WL 823419 (E.D. Tex. Mar. 2, 2017) ............................... 7, 10

*Wolverine World Wide, Inc. v. Nike, Inc.*,
   38 F.3d 1192 (Fed. Cir. 1994)........................................................................... 6

*YETI Coolers, LLC v. Kaiser Group, Inc.*,
   No. 1:15-cv-725-RP (W.D. Tex. February 29, 2016)......................................... 1

### <u>Statutes</u>

15 U.S.C. § 1117 ................................................................................................. 5
15 U.S.C. § 1125 ................................................................................................. 4
35 U.S.C. § 102 .................................................................................................. 6
35 U.S.C. § 103 .................................................................................................. 6
35 U.S.C. § 112 .................................................................................................. 6

**<u>Rules</u>**

Fed. R. Civ. P. 26 ..................................................................................................................... 8
Fed. R. Civ. P. 45 ..................................................................................................................... 8

## I.    <u>INTRODUCTION</u>

Home Depot's Motion should be denied because YETI's claims against Home Depot's suppliers will not resolve YETI's claims against Home Depot. So the requested stay is inefficient and causes significant prejudice to YETI, while denial would cause no prejudice to Home Depot. This is exactly why this Court previously denied a similar request for a stay made by Kaiser Group, Inc. and related defendants in another YETI action. *See YETI Coolers, LLC v. Kaiser Group, Inc.*, No. 1:15-cv-725-RP (W.D. Tex. February 29, 2016) (minute order denying motion to stay case against downstream retailers); ECF Nos. 24, 26, 28, 32-33 (briefing)).

Home Depot relies on many of the same arguments, and uses much of same, inapplicable case law, that Kaiser did, primarily pointing to the "customer suit" exception. But this exception, and its underlying logic, apply to patent infringement cases, which are fundamentally different because those claims are product-specific, not defendant-specific. Therefore, none of Home Depot's patent cases support granting a stay for YETI's defendant-specific trade dress claims. Here, for example, a jury could find that Home Depot's supplier did not infringe YETI's trade dress when it sold accused tumblers to Home Depot, but could also find that Home Depot's sale of the exact same tumblers infringed YETI's trade dress. So resolution of YETI's claims here against a Home Depot supplier will not necessarily resolve YETI's claims against Home Depot.

Rather, under the proper stay standard (where Home Depot bears a "heavy burden" to show a "clear case of hardship or inequity"), the proposed stay fails on all fronts. It is inefficient and undermines judicial economy because it would require the Court, the parties, and the witnesses to address YETI's claims in an additional proceeding, and because it would demand extra Court involvement in discovery. The stay also harms YETI by delaying its day in Court against Home Depot, allowing Home Depot to continue sowing confusion in the marketplace,

1

harming consumers and eroding YETI's goodwill. A delay would also hinder YETI's ability to discover relevant evidence and potentially preclude the presentation of relevant evidence at trial. Finally, Home Depot identifies no "hardship or inequity" it would suffer without the stay. Nor can it; a desire to avoid discovery and trial is not cognizable hardship warranting a stay.

## II.   FACTUAL BACKGROUND

YETI was formed by two Austin brothers. Through its investment in innovation and quality, YETI has become a well-known provider of premium, heavy-duty drinkware, including YETI's 30 oz. and 20 oz. Rambler™ tumblers. YETI's success has attracted many imitators that copy YETI's popular and purposefully distinct designs to trade off YETI's goodwill in the marketplace. YETI brought suit against Home Depot because it recently began selling drinkware products that misappropriate YETI's drinkware trade dress in its brick-and-mortar stores and through its website. Home Depot represents that all of its infringing drinkware products are supplied and manufactured by other defendants.[1] At least some, if not all, of these suppliers also appear to independently sell their infringing products directly to consumers online.

## III.   THE COURT SHOULD DENY HOME DEPOT'S REQUEST FOR A STAY

### A.   HOME DEPOT FAILS TO MENTION AND DOES NOT MEET ITS BURDEN

A court considering a stay is "guided by the policies of justice and efficiency" and may consider: (1) the hardship and inequity on the moving party without a stay; (2) the prejudice the non-moving party will suffer if a stay is granted; and (3) judicial economy. *See, e.g., Hopple v. Prospect Mortgage, LLC*, No. 13-137, 2013 WL 5493004, at *2 (W.D. Tex. Oct. 2, 2013); *Strong ex rel. Tidewater, Inc. v. Taylor*, No. 11-392, 2013 WL 818893, at *2 (E.D. La. Mar. 5,

---

[1] YETI does not concede these supplying entities all genuinely "manufacture" products as opposed to simply buying them from other companies. (*See, e.g.,* Ex. A, Hamp Decl. at Ex 2) (showing defendant importation of tumblers from other entities).

2013).[2] The Supreme Court has made clear that the movant "for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay … will work damage to some one else." *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 708 (1997). Home Depot therefore has a "heavy burden" to show why a stay should be granted. *See, e.g., Ffrench v. PricewaterhouseCoopers Corp. Fin., LLC*, No. 12-291, 2012 WL 1900930, at *2 (S.D. Tex. May 24, 2012). Home Depot fails to acknowledge its burden, much less meet it. And none of the factors support granting a stay here.

### B.   THE PROPOSED STAY WOULD BE INEFFICIENT & HINDER JUDICIAL ECONOMY

#### 1.   *A Stay Would Require Additional Proceedings Because It Will Not Resolve Home Depot's Liability or the Extent of YETI's Relief*

Home Depot wrongly argues that its liability "is tied entirely" to YETI's claims against its suppliers. (Mem. at 1.) But trade dress infringement is a defendant-specific determination, even if the underlying accused products are the same as to multiple defendants, because it is based on whether a ***particular defendant's*** actions are likely to cause consumer confusion. This assessment requires consideration of many factors, the majority of which are specific to that defendant, including: (1) that defendant's intent, (2) the identity of the retail outlets between that defendant and the trademark holder, (3) the identity of purchasers between that defendant and the trademark holder, (4) the identity of marketing, advertising and promotion media used between that defendant and the trademark holder, (5) the degree of care of that defendant's potential

---

[2] Home Depot identifies the wrong test for a stay, relying on two patent cases to recite the specific test used when a defendant files a patent reexamination proceeding in the Patent & Trademark Office against a patent asserted in the litigation. (Mem. at 8-9.) In this distinct, patent-specific test, different Congressional goals are at play. Patent reexamination procedures were "intended to provide an alternative method of resolving disputes, utilizing the expertise of the examiners of the Patent Office." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007). In this case, by contrast, Home Depot must show a "clear case of hardship or inequity" to justify a stay, which is not part of the distinct stay framework for patent reexaminations. But Home Depot does not identify any cognizable hardship, as explained below.

purchasers and (6) evidence of actual confusion in the marketplace between the trademark holder and that defendant. *See, e.g., Bd. of Supervisors v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008);  *see also Harry and David v. ICG Am., Inc.*, No. 08-3106, 2010 WL 3522982, at *2 (D. Or. Sept. 7, 2010) (describing the many "separate and unique" facts between defendants accused of infringing the same trademarks). Similarly, for trademark dilution, relevant factors include each defendant's intent and any associations arising from each defendant's uses. 15 U.S.C. § 1125 (c)(2)(B).

Given the factors specific to each defendant, Home Depot's argument that it does not have "any … information key to a trade dress infringement claim," (Mem. at 1) is simply not correct, and resolving claims against the suppliers will not necessarily resolve the trade dress claims against Home Depot, even when the defendants sell the same products. Even if certain supplier activities were ultimately found not to infringe, Home Depot still could. As one example, a supplier could argue there is no likelihood of confusion from its negotiated, large quantity sales to Home Depot, which, the supplier might argue, is a sophisticated purchaser that exercises a high degree care in its purchasing decisions. Even if a fact finder concluded that there was no likelihood of confusion in that scenario (although this would ignore post-sale confusion resulting from end-buyer's purchases and use of the accused products), the same or another fact finder could conclude that a likelihood of confusion would result from Home Depot selling the exact same product to its customers. That finding could be based, for example, Home Depot's intent to benefit from YETI's goodwill, the nature of Home Depot's sales to individual consumers through the stores and website under its control, the overlap between Home Depot and YETI customers, the lower degree of care exercised by Home Depot customers, Home Depot's promotional activities, and so on.

YETI also would not be entitled to all of its remedies if the case against Home Depot is stayed, necessitating additional proceedings. Home Depot simply indicates it is willing to "to be bound by the Court's **liability** findings." (Mem. at 2) (emphasis added). While a liability finding on the part of a supplier is not necessarily applicable to Home Depot, as described above, Home Depot also concedes that YETI's monetary remedies are a distinct issue that will require additional proceedings after the supplier's case. Indeed, Home Depot expressly states it should "stand on the sidelines" until a later time when YETI's damages are determined, and only after YETI fully prevails against the suppliers. (Mem. at 10.)

But this framework is nonsensical because under the Lanham Act, YETI is entitled to simultaneously seek monetary remedies, such as profits, from every defendant's willful acts of trademark infringement and dilution, including an alleged downstream retailer like Home Depot. 15 U.S.C. § 1117(a). *See also, e.g., Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 144, 158-60 (E.D.N.Y. 2016) (trademark owner was entitled to damages from infringing distributors, wholesalers, and retailers, among others, in single action). *Cf Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.,* No. 00-1934, 2003 WL 22331254, at *7-8, 22-27 (N.D. Ga. May 9, 2003) (awarding monetary remedies against retailer that resold accused goods to consumers). And Home Depot's limited agreement to be bound on "liability" only also does not indicate an agreement to be bound to any injunctive relief YETI obtains against the suppliers, and will presumably require additional proceedings on injunction factors such as the balance of hardships between YETI and Home Depot.

## 2. *Patent Law's Customer Suit Exception Does Not Apply Here*

Home Depot uses an inapplicable patent-case analogy to argue that the case should be stayed under the "customer suit" exception, because infringement and validity must be addressed, as in a patent case, and therefore "all of the issues or questions involving Home Depot

would be resolved by" adjudicating the claims against the suppliers first. (Mem. at, *e.g.,* 2-4, 8-10.) To support this argument, Home Depot essentially relies on cases based primarily or entirely on patent law. The issues of patent infringement and validity indeed are "common" between defendants because, for example, an accused product either is or is not covered by a patent claim, regardless of, *e.g.*, the defendant's intent, sales outlets, customers, advertising, purchasers sophistication, and so on. *See, e.g., Wolverine World Wide, Inc. v. Nike, Inc*., 38 F.3d 1192, 1199 (Fed. Cir. 1994) (presence of patent claim elements in "accused device" determines infringement). But here, defendant specific factors matter to trade dress infringement and dilution. Similarly, whether trade dress is protectable is based in part on the existence of secondary meaning, which requires consideration of many factors, including the defendant's intent. *Board of Supervisors*, 550 F.3d at 476. In contrast, whether a patent is protectable (valid) is based on the "prior art" and other factors that do not vary depending on the defendant. *See, e.g.,* 35 U.S.C. §§ 102-03, 112.

Therefore, trade dress infringement and validity, which defendants rely on to invoke the "principles" of patent law's "customer suit" exception, are not "tied exclusively" together from defendant to defendant as alleged by Home Depot. (Mem. at 2-4.) Thus, YETI's claims against the suppliers will not resolve "all of the issues or questions involving Home Depot," (*id.* at 2), but in fact will require a separate, later trial for Home Depot if the stay is granted.

Home Depot ignores all this, purporting there is a "trend" among the federal courts to "extend" the customer suit exception beyond patent law such that it should apply here. (Mem. at 5.) But in support, Home Depot cites nine cases that were exclusively or primarily based on patent law. None hold that the customer-suit exception supports a stay in a trademark only case. Home Depot also cites to an order from another case where it is a defendant to imply there is

precedent for its proposed stay. (Mem. at 2.) But this order in inapposite: Home Depot fails to mention that the plaintiff there was "amenable" to staying the case provided it still received discovery. (Ex. A, Hamp. Decl. at Ex. 1 at 2.) Here, YETI does not agree to a stay in any form.

*Sillage* is the only case that even somewhat analyzes the customer suit exception in a litigation involving trademark claims, but the case is still off-point. The issue before that court was a motion to sever and stay customer cases involving **both** patents and trademarks. *Sillage*, 2015 WL 3649605, at *1. The *Sillage* court relied on patent cases in its stay analysis and did not even address whether the trademark issues were "common" between manufacturers and customers, nor did it need to because of the patent claims. *Id.* at *5-7. The court even explicitly noted the lack of case law applying the customer-suit exception "to non-patent claims." *Id.* at *5. The *Sillage* court also made clear it was applying "principles" of the exception to stay the severed actions and therefore avoid "parallel" litigation involving the severed defendants. *Id.* at *5-6. But here, by contrast, Home Depot has not moved to sever and there is no risk of a distinct, "parallel" action with Home Depot alone.[3] Thus, the logic and holding of *Sillage* is inapposite.

And even in patent cases, courts often decline application of the customer suit exception when, like here, non-patent claims are present or the issue of infringement is otherwise not "common" between defendants, as it is in a trade dress dispute. *See, e.g., Ultravision Techs., LLC v. Lamar Adv. Co.*, No. 16-374, 2017 WL 823419, at *2-4 (E.D. Tex. Mar. 2, 2017) (denying stay when manufacturer claims would "not necessarily resolve" those against

---

[3] Home Depot cites to *Secure Axcess* to argue that the customer suit exception can still apply when both a manufacturer and customer are present, (Mem. at 4), but ignores that the case explains that this is only to facilitate **transfer** of a **severed** action. 2014 WL 986169, at *2. Here, Home Depot does not move to sever or transfer. Therefore, in this procedural posture the "policy reasons behind the customer suit exception do not apply," as Home Depot is already in a suit with an alleged manufacturer. *Kaneka Corp. v. Zhejian Medicine Co., Ltd.*, No. 11-2389, 2016 WL 6208309, at *3 (C.D. Cal. July 6, 2016) (movant's reliance on *Sillage* "misplaced"; case was "distinguishable" from the customer suit scenario for this reason).

indemnified product reseller, including unfair competition claim); *Kaneka*, 2016 WL 6208309, at *3 (denying stay when infringement was not "common" across defendants due to differences in proof between direct and indirect infringers).

### 3. Home Depot's Proposal Would Likely Require the Court to Resolve Numerous Discovery Motions

YETI will need discovery from Home Depot. Home Depot recognizes this by making references to offering "limited discovery." (Mem. at, *e.g.*, 2). But Home Depot's proposed Order is unworkably narrow in terms of the subject matter and type of discovery permitted:

> [Home Depot will] respond to written requests by Yeti for the production of information, documents and things ***necessary to establish the existence*** or nonexistence of: a. ***Manufacturing Defendants' alleged trademark infringement*** on Yeti's alleged trade dress; b. the validity of Yeti's alleged trade dress; and c. Sales and profit information related to the accused products, ***to the extent Yeti demonstrates an entitlement thereto***.

(ECF 30) (emphasis added). At a basic level, Home Depot's proposed terms ignore that YETI is entitled to seek specific information regarding Home Depot and the defendant specific factors regarding its infringement and dilution. The proposal also unduly limits they type of discovery. For example, YETI cannot seek depositions or propound interrogatories, making it harder for YETI to obtain discovery from Home Depot than if YETI had not sued Home Depot in the first place. *See, e.g.,* FED. R. CIV. P. 26, 45.

And Home Depot merely commits to "respond[ing]" to requests for documents that are "necessary" to "establish the existence" of, *e.g.,* a supplier's infringement of YETI's Trade Dress. But Home Depot claims that it "has no relevant information … key to a trade dress infringement claim" and that "[t]his information rests solely with the" supplier defendants. (Mem. at 2). Thus, Home Depot has already effectively declared that it does not think it has any evidence "necessary" to establish the "existence" of infringement. (*See also* Mem. at 7 ("Home Depot cannot contribute … to defending" against YETI's claims)). This is wrong as explained

above,[4] and portends likely disputes. Home Depot similarly ties its terms about sales information to a requirement that YETI demonstrate an "entitlement" first. This all suggests that YETI will be forced to move the Court for meaningful discovery. Home Depot's proposed terms also ignore that in the Ohio stay order touted by Home Depot, (Mem. at 8), the plaintiff could obtain discovery about the "likelihood of confusion" from the products, regardless of who sold them, (ECF 28-3, at 2), but here Home Depot refuses to allow such necessary discovery.

### C.      YETI WOULD BE PREJUDICED BY A STAY

The proposed stay would prejudice YETI. As explained above, the stay would force YETI to litigate this case in two proceedings instead of one, prevent YETI from receiving sufficient discovery from Home Depot, and would inevitably force YETI to expend resources moving the Court regarding discovery. A stay could also prevent YETI from presenting defendant-specific information during a trial. As one example, a supplier may argue that information related to Home Depot (such as Home Depot's intent, customers, marketing, advertising, and methods of sales) is irrelevant and unduly prejudicial in an action against that supplier. This argument may prevent relevant evidence from coming into the trial and may prevent the jury from receiving a full understanding of the likelihood of confusion created in the marketplace, including post-sale confusion. In addition, if a supplier's case is resolved in its favor, Home Depot may wrongly claim that these issues are resolved and cannot be "re-litigated" against it, effectively precluding any YETI use of Home Depot specific evidence.

A stay will also prevent YETI from receiving timely relief. Trial in this case is scheduled in February of 2019, (ECF 38), and if the case against Home Depot is stayed, Home Depot can continue its infringement and dilution unabated through and well after this initial trial, siphoning

---

[4] Home Depot-related evidence is also still relevant to actionable post-sale confusion arising as a result of the suppliers' products, even after suppliers' sales to Home Depot.

YETI's customer goodwill and preventing YETI's control over its rights and image, and delaying any relief. Such delay is prejudicial. *See, e.g., Hopple*, 2013 WL 5493004, at *3 (proposed stay would result in four to six month delay that resulted in "a substantial likelihood of prejudice [to the Plaintiff] if a stay is granted"); *Ultravision*, 2017 WL 823419, at *4-5; *Kaneka*, 2016 WL 6208309 at *4. Relatedly, staying the case against Home Depot will prejudice YETI through the potential loss of evidence. It will be many months before YETI receives full discovery from Home Depot if this case is stayed. During that time, evidence such as electronic marketing materials or customer comments may be lost.

### D.  DENIAL OF A STAY WOULD NOT PREJUDICE HOME DEPOT

Home Depot "must make out a clear case of hardship or inequity" for a stay. *Landis,* 299 U.S. at 254. But Home Depot does not identify ***any*** hardship, and premises its Motion[5] on the alleged simplification of issues. (Mem. at, *e.g.*, 2). This is not enough. *Clark v. Sw. Airlines Co.*, No. 16-910, 2017 WL 1435762, at *2 (W.D. Tex. Apr. 21, 2017) (Pitman, J.) (denying stay when movant solely relied on judicial efficiency arguments). At the most, Home Depot can point to its desire to avoid its obligations in discovery and trial, but without more, this is not cognizable prejudice warranting a stay. *See, e.g., SuperMedia Inc. v. Bell*, No. 12-2034, 2012 WL 5389683, at *3 (N.D. Tex. Nov. 2, 2012) ("burden of continuing to litigate" is not a "clear case of hardship or inequity" warranting a stay).

### IV.   <u>CONCLUSION</u>

For the above reasons, the Court should deny the Motion to stay.

Dated: <u>July 14, 2017</u>                                    Respectfully submitted,

---

[5] Home Depot states that YETI opposed Home Depot's proposed stay "without explanation" (Mem. at 7) but YETI provided exemplary reasons why the proposed stay was not appropriate in at least the parties' earlier-filed Rule 26 report. (ECF 24 at 3.)

/s/J. Pieter van Es
Joseph R. Knight
Texas Bar No. 11601275
jknight@ebbklaw.com
111 Congress Avenue, Suite 2800
Austin, Texas 78701
Telephone: 512.770.4010
Facsimile: 877.851.6384

Joseph J. Berghammer (admitted in the Western
District of Texas)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
J. Pieter van Es (admitted in the Western District of
Texas)
Illinois Bar No. 6210313
pvanes@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**

### CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I caused the foregoing document to be electronically filed with the Clerk of the court pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was thereby caused to be served on Defendants by and through their counsel of record.

/s/J. Pieter van Es