IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI COOLERS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:17-cv-342-RP |
| | § | |
| HOME DEPOT U.S.A., INC.; and | § | |
| TAKEYA USA CORPORATION; | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendant Takeya USA Corporation's ("Takeya") Motion to Dismiss, (Dkt. 11), and related filings. Also before the Court is Takeya's Motion to Take Judicial Notice. (Dkt. 14). Having considered the parties' submissions and the relevant law, the Court will grant Takeya's motion to take judicial notice but deny its motion to dismiss.

**I. Background**

Plaintiff YETI Coolers, LLC ("YETI") develops, manufactures, and sells insulated drinkware. (Compl., Dkt. 1, at 3). Takeya also sells insulated drinkware. (*See* Mem. Mot. Dismiss, Dkt. 12, at 4 (showing illustrations of Takeya's drinkware)). YETI filed suit against Takeya and other defendants on April 12, 2017, alleging that Takeya sold insulated drinkware that unlawfully imitates the trade dress of two YETI products: the 30 oz. Rambler™ Tumbler ("30 oz. tumbler") and the 20 oz. Rambler™ Tumbler ("20 oz. tumbler"). (*Id.* at 3–4). Specifically, YETI asserts claims for: (1) state- and federal-law trade dress infringement; (2) state- and federal-law trade dress dilution; (3) state- and federal-law unfair competition; (4) state-law misappropriation; and (5) state-law unjust enrichment. (*Id.* at 9–20).

In its motion to dismiss, Takeya argues that Federal Rule of Civil Procedure 12(b)(6) requires that the Court dismiss each of YETI's causes of action because YETI has in each case failed to state

1

a claim on which relief can be granted. (Mot. Dismiss, Dkt. 11). Specifically, Takeya argues that: (1) YETI's trade dress infringement claims fail because (a) it has not described its trade dress with sufficient particularity, (b) it has not sufficiently pleaded that there is a likelihood of confusion with Takeya's products, (c) it has not sufficiently pleaded that its trade dress has acquired secondary meaning, and (d) it has not sufficiently pleaded that its trade dress is nonfunctional; (2) YETI's trade dress dilution claims fail because it has not pleaded sufficient facts to show that its trade dress is famous; and (3) YETI's unfair competition, misappropriation, and unjust enrichment claims are derivative of its trade dress claims and therefore fail for the same reasons. (*Id.* at 2–3).

This is not the Court's first occasion to consider a Rule 12(b)(6) motion against YETI for these sorts of claims. The Court recently denied two motions to dismiss in cases involving claims related to the trade dress of YETI products: *YETI Coolers, LLC v. Magnum Solace, LLC*, No. 1:16-CV-663-RP, 2017 WL 5515910 (W.D. Tex. Mar. 30, 2017) and *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-578-RP, 2017 WL 2199012 (W.D. Tex. May 18, 2017). Both cases contained claims pertaining to the trade dress of the YETI products at issue in this action.

## II. Motion to Take Judicial Notice

Before considering Takeya's motion to dismiss, the Court will consider its Motion to Take Judicial Notice. (Dkt. 14). In its motion, Takeya asks the Court to take judicial notice of a series of webcapture images from YETI and Takeya's websites illustrating how each company advertises its drinkware. (*Id.* at 2). YETI does not oppose Takeya's request for the purpose of deciding this motion to dismiss. (Resp., Dkt. 19, at 2). The Court therefore grants Takeya's motion as unopposed.

## III. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff's] grounds for

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## IV. Trade Dress Infringement and Unfair Competition

YETI claims that Takeya is infringing the trade dress of its 30 and 20 oz. tumblers. (Compl., Dkt. 1, at 3–9).[1] Takeya, meanwhile, argues that YETI has failed to state a claim for trade dress infringement or unfair competition because it failed to plead sufficient facts to support several elements. (Mot. Dismiss, Dkt. 11, at 2).

The Lanham Act provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(1). "Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales

---

[1] YETI asserts trade dress infringement claims under federal law and Texas common law. (Compl., Dkt. 1, at 9 (trade dress infringement under 15 U.S.C. § 1125(a)) and 15 (common law trademark infringement)). YETI also asserts claims for federal- and state-law unfair competition in connection with its trade dress. (*Id.* at 12 (unfair competition under 15 U.S.C. § 1125(a)) and 16 (common-law unfair competition)). "The same tests apply to both trademarks and trade dress to determine whether they are [protectable] and whether they have been infringed," *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998), and the same rules and standards apply to federal- and state-law trademark infringement and unfair competition claims. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (citation and quotation marks omitted)); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009) ("The same legal standard applies to Lanham Act infringement claims, Texas statutory trademark infringement claims, Texas common-law trademark infringement claims, and federal and state unfair competition claims."). The Court will therefore analyze all of YETI's trade dress infringement and unfair competition claims under federal law.

3

techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citation and quotation marks omitted).

To succeed on an infringement or unfair competition claim under the Lanham Act, a plaintiff must establish three elements. First, the plaintiff must establish "that the mark or trade dress, as the case may be, qualifies for protection." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998). To qualify for legal protection, the trade dress must be inherently distinctive or have achieved secondary meaning in the public's mind; that is, it must have "come through use to be uniquely associated with a specific source." *Id.* (internal quotations and citations omitted). Second, the plaintiff must show that the defendant's use of the trade dress creates "a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship" of the defendant's product or service. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (internal quotations and citations omitted). Third, trade dress is only entitled to legal protection if it is nonfunctional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (noting that the Lanham Act gives the person asserting protection of an unregistered trade dress the burden to prove that the trade dress is not functional).

In addition to those elements, a plaintiff must "articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim." *New York Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 882 (S.D. Tex. 2014) (citing *Alpha Kappa Alpha Sorority Inc. v. Converse Inc.*, 175 Fed. App'x. 672, 677–81 (5th Cir. 2006), which held that a complaint in which the plaintiffs identified the elements comprising their claimed marks was sufficient to survive a motion to dismiss).

In this case, YETI alleges that it has protectable trade dress rights in its 30 and 20 oz. tumblers. (Compl., Dkt. 1, at 3–7). YETI describes its trade dress as follows:

> "[T]he overall look, design, and appearance of the [30 and 20 oz. tumblers], which includes the design and appearance of the curves, tapers, and lines in the [30 and 20

4

oz. tumblers]; the design and appearance of the walls of the [30 and 20 oz. tumblers]; the design and appearance of the rim of the [30 and 20 oz. tumblers]; the design, appearance, and placement of the taper in the side wall of the [30 and 20 oz. tumblers]; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the [30 oz. tumbler]; the design, appearance, and placement of the style line around the base of the [30 and 20 oz. tumblers]; the design, appearance, and placement of the tab on the lid of the [30 and 20 oz. tumblers]; the design, appearance, and placement of the drinking opening on the lid of the [30 and 20 oz. tumblers]; the design, appearance, and placement of the top plane of the lid of the [30 and 20 oz. tumblers]; the design, appearance, and placement of the side walls of the lid of the [30 and 20 oz. tumblers]; the color contrast and color combinations of the [30 and 20 oz. tumblers] and the tumbler lid on the [30 and 20 oz. tumblers]; and the relationship of these features to each other and to other features.

(Id. at 5–7). YETI also provides the following exemplary images of its trade dress:



| 30 oz. tumbler | 20 oz. tumbler |

(*Id.* at 5–6). YETI alleges that Takeya is infringing the trade dress of both products. (*Id.* at 8).

Takeya, meanwhile, argues that YETI's trade dress claims fail for four reasons. First, YETI has not described its trade dress with sufficient particularity. (Mot. Dismiss, Dkt. 11, at 1–2). Second, YETI has not adequately pleaded that Takeya's products create a likelihood of confusion with YETI's. (*Id.* at 2). Third, YETI has not adequately pleaded that its trade dress has acquired

5

secondary meaning. (*Id.*). And finally, YETI has not adequately pleaded that its trade dress is nonfunctional. (*Id.*). The Court will address each of these arguments in turn.

*A. Articulation of YETI's Trade Dress*

Because intellectual property rights must be clearly defined, 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:3 (5th ed.), YETI must "articulate the elements that comprise its protected trade dress." *New York Pizzeria*, 56 F. Supp. 3d at 882–83. Indeed, this Court has previously scrutinized YETI's articulation of its protected trade dress for two of the products at issue in this case. *Imagen Brands*, 2017 WL 2199012, at *3–4 (analyzing YETI's articulation of the trade dress of its 30 and 20 oz. tumblers). In *Imagen Brands*, the Court expressed its concern with a number of vague elements of YETI's asserted trade dress, such as the "visual flow" of the tumblers and the "appearance of design aspects" of the tumblers. *Id.* at 4. Despite these shortcomings, the Court ultimately found that YETI articulated its trade dress with sufficient specificity to survive a motion to dismiss. *See id.* (noting that, among other things, YETI's allegations concerning its "style line," "color contrasts and combinations" between the tumblers and their lids, and the tapers of the tumblers' side walls were specific, discernible aspects of the products' trade dress).

YETI's articulation of the trade dress of its 30 and 20 oz. tumbler in this action is similar but not identical to its pleading in *Imagen Brands*. In its complaint in this action, YETI has abandoned several of the vaguest elements from its *Imagen Brands* complaint. Gone are references to the tumblers' "visual flow"; the "visual connection and relationship" between the tumblers' curves, tapers, and lines; the "design aspects" of the tumblers; and the "overall look and appearance" of the tumblers together with their lids. *Imagen Brands*, 2017 WL 2199012, at *3. Remaining are the elements the Court found to be sufficiently specific in *Imagen Brands*, such as the style line, the color contrasts, and the tapers of the side walls. *Imagen Brands*, 2017 WL 2199012, at *3–4; (Compl., Dkt. 1, at 5–7).

6

Takeya argues that YETI's trade dress claims should be dismissed as insufficiently particular because its trade dress "generically describ[es] the features of an insulated tumbler." (Mem. Mot. Dismiss, Dkt. 12, at 11). Takeya cites two problems stemming from YETI's allegedly generic trade dress descriptions. First is that a generic design may be "incapable of serving to identify any one particular source." *Berg v. Symons*, 393 F. Supp. 2d 525, 555 (S.D. Tex. 2005); (Mem. Mot. Dismiss, Dkt. 12, at 8). Second is that "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001); (Mem. Mot. Dismiss, Dkt. 12, at 7). The Court, however, disagrees that YETI's alleged trade dress is too generic to satisfy the requirement that the company plead its trade dress with particularity.

Takeya would have the Court read YETI's trade dress description as simply a collection of design features: tapered walls, a rim, a lid with a tab, a hole for drinking, and so on. (Mem. Mot. Dismiss, Dkt. 12, at 9–10). If that were all YETI's complaint alleged, perhaps Takeya would be correct. But YETI alleges more than that. YETI describes its trade dress as the "design, appearance, and placement of" features like the style line or the side-wall taper; the "design and appearance of" features like the rim or the curves, tapers, and lines; and the "color contrast and color combinations" of the tumblers' body and lid. (Compl., Dkt. 1, at 5, 6). The complaint's reference to the design, appearance, or placement of individual features signals that YETI's asserted trade dress not a set of design features, but rather the individual and collective visual appearance of those design features. While a product feature—such as walls or a rim—may be generic, that same feature might be susceptible to a range of arbitrary designs with distinct appearances. Rather than simply listing product features, YETI's alleged trade dress describes the appearance of those features in combination, which is not so generic as to render YETI's trade dress claims implausible.

7

Takeya's assertion that YETI's trade dress is incapable of identifying the product's source assumes the answer to the ultimate questions in this dispute, one that requires the sort of disputed-fact resolution that is improper at this early stage in the action. Takeya's concern about protecting ordinary product designs is captured by the requirement to plead (and ultimately prove) nonfunctionality, which the Court addresses in a later section of this order. YETI needs only to articulate its trade dress with enough specificity to allow the court to "evaluate the plausibility" of YETI's claim and provide Takeya with "fair notice of the grounds of the claim." *New York Pizzeria*, 56 F. Supp. 3d at 883. YETI's description of its products' trade dress in this action is at least as specific as it was in *Imagen Brands*. Just as it did in *Imagen Brands*, then, the Court finds that YETI has articulated its products' trade dress with enough specificity to state a plausible claim for relief.

### B. *Likelihood of Confusion*

Takeya also argues that YETI has failed to adequately allege that Takeya's alleged use of YETI's trade dress creates a likelihood of confusion. (Mot. Dismiss, Dkt. 11, at 2). Takeya argues that YETI "fails to plead any of [the] factors" that courts use to determine likelihood of confusion, relying instead on conclusory statements. (Mem. Mot. Dismiss, Dkt. 12, at 20). Takeya also argues that YETI's complaint is misleading because it fails to show images of YETI or Takeya drinkware in which either company's logo or branding is visible. (*Id.*).

Regarding Takeya's first argument, the Court disagrees that YETI has failed to plead facts relevant to the so-called "digits of confusion," which include: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Pebble Beach*, 155 F.3d at 543. True, YETI's complaint contains conclusory statements about the likelihood of confusion. (*See* Compl., Dkt. 1, at 9 ("Defendants' use of YETI's trade dress and/or colorable imitations thereof is likely to

cause confusion.")) But YETI also alleges a number of facts relevant to the factors listed above. YETI alleges that Takeya sells drinkware products that are "confusingly similar imitations of YETI's drinkware products." (*Id.* at 7). YETI also alleges through photographic images that Takeya sells products similar to YETI's in terms of size, shape, and material. (*See id.* at 5–6 and 8 (providing similar-looking exemplary images of YETI's drinkware and the allegedly infringing drinkware)). YETI alleges that Takeya infringed on YETI's trade dress intentionally. (*Id.* at 16). Although YETI has not provided facts relevant to every factor, it need not do so. *Pebble Beach*, 155 F.3d at 543 ("No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these digits of confusion.") (citation and quotation marks omitted). The Court has previously held that these allegations were sufficient to state a plausible claim for trade dress infringement;[2] the same is true in this case.

Takeya's second argument fails because it asks the Court to resolve factual issues relevant to the merits of YETI's claim. Even having taken judicial notice of the advertising images provided by both parties, the question before the Court at this stage is simply whether YETI has pleaded facts that, accepted as true, state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. The plausibility requirement does not require plaintiffs to prove that they will succeed on the merits to survive a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citation and quotation marks omitted). As discussed above, YETI alleges that Takeya sells drinkware that looks similar to YETI's and that it does so intentionally to deceive customers about the product's source. Taken as true, as they must be at this stage, these facts are enough to state a plausible claim for relief.

---

[2] *Imagen Brands*, 2017 WL 2199012, at *7; *Magnum Solace*, 2017 WL 5515910, at *6.

9

*C. Secondary Meaning*

Takeya's third argument concerning YETI's trade dress claims is that YETI has failed to plead facts sufficient to show that its trade dress has acquired secondary meaning. (Mot. Dismiss, Dkt. 11, at 2).

To be entitled to legal protection, a plaintiff's trade dress must either be inherently distinctive or have acquired secondary meaning in the public's mind. *Pebble Beach*, 155 F.3d at 536. Because product design is not inherently distinctive, a plaintiff (such as YETI in this case) asserting rights in product-design trade dress must establish secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212–13, 216 (2000) ("[A] product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."). Secondary meaning is used generally to indicate that a mark or dress "has come through use to be uniquely associated with a specific source." *Two Pesos, Inc. v. Taco Cabana, Inc.* 505 U.S. 763, 766 n.4 (1992) (citation and quotation marks omitted).

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). In making this determination, courts consider factors such as the "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature and use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress." *Pebble Beach*, 155 F.3d at 541.

Takeya points out that YETI's complaint "is silent on at least three" of these factors (length and manner of use, consumer-survey evidence, and direct customer testimony) and that it offers only ambiguous evidence of a fourth (sales volume). (Mem. Mot. Dismiss, Dkt. 12, at 16–17). Then,

according to Takeya, YETI only pleads conclusory statements without factual support to establish the remaining three factors. (*Id.* at 17).

In its complaint, YETI alleges that it "has extensively and continuously promoted and used [its] designs for years in the United States and Texas." (Compl., Dkt. 1, at 3). Through that "extensive and continuous promotion and use," YETI alleges that its products' "designs have become well-known indicators of the origin and quality of" YETI's drinkware. (*Id.*). YETI alleges that it "has sold millions of the Rambler™ Drinkware throughout the United States, including sales to customers in the state of Texas." (*Id.* at 4). YETI alleges that it "has invested significant resources in . . . advertising and marketing . . . the Rambler™ Drinkware." (*Id.*). YETI alleges that "the designs and features of the Rambler™ drinkware have received widespread and unsolicited public attention," such as being "featured in numerous newspaper, magazine, and Internet articles." (*Id.*). YETI alleges that as a result of all of this use, advertising, and publicity, its drinkware has accrued "highly valuable goodwill" and achieved "substantial secondary meaning." (*Id.*).

The Court has twice found these allegations to be sufficient to plausibly plead that YETI's trade dress has achieved secondary meaning. *Imagen Brands*, 2017 WL 2199012, at *6–7; *Magnum Solace*, 2017 WL 5515910, at *5–6. In doing so, the Court has specifically considered and rejected the argument Takeya makes here. *Imagen Brands*, 2017 WL 2199012, at *6; *Magnum Solace*, 2017 WL 5515910 at *5. The Court has no reason to decide differently in this action. The Court therefore finds that YETI has sufficiently alleged that its trade dress has secondary meaning to survive a motion to dismiss.

## D. *Functionality*

Finally, Takeya argues that YETI's trade dress claims must be dismissed because YETI's complaint "fails to show that . . . the design of the Rambler™ tumblers is not functional." (Mot. Dismiss, Dkt. 11, at 2).

The Lanham Act places the burden to prove that a product's trade dress is not functional on the party asserting unregistered trade dress protection. 15 U.S.C. § 1125(a)(3). The nonfunctionality requirement "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (citation and quotation marks omitted).

There are two tests to determine whether a product feature is functional. The traditional test is whether a feature is "essential to the use or purpose of the article or if it affects the cost or quality of an article." *Id.* Under this definition, "if a product feature is the reason the device works, then the feature is functional." *Id.* (citation and quotation marks omitted). The second test is the "competitive necessity" test, under which a feature is functional "if the exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Id.* at 356 (citation and quotation marks omitted). Even if individual constituent parts of a product's trade dress are functional, "a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). The question, in other words, is not whether some component of a product's trade dress is functional, but whether the entirety of a product's trade dress is functional. *Id.*

Takeya argues that YETI's nonfunctionality pleading is deficient in two ways. First, Takeya argues that YETI simply asserts that its trade dress is nonfunctional without asserting facts sufficient to establish nonfunctionality. (Mem. Mot. Dismiss, Dkt. 12, at 14). Second, Takeya attempts to distinguish this case from *Imagen Brands* and *Magnum Solace* by pointing out that the defendants in those cases failed to argue that YETI's drinkware shares a variety of design similarities with preexisting drinkware, such as 7-11's Big Gulp™. (Mem. Mot. Dismiss, Dkt. 12, at 15; Reply, Dkt.

23, at 7–8). According to Takeya, "the popularity of the similarly-shaped 7-11 Big Gulp cups" demonstrates that YETI's trade dress is essential because consumers want drinkware to have the features that comprise its trade dress. (Mem. Mot. Dismiss, Dkt. 12, at 15).

The Court has previously considered and rejected Takeya's argument that YETI has failed to allege sufficient facts to show nonfunctionality. *Imagen Brands*, 2017 WL 2199012, at *4–5; *Magnum Solace*, 2017 WL 5515910, at *4–5. In both cases, YETI's complaints described the trade dress of its 30 and 20 oz. tumblers as a combination of features—such as the taper of the tumblers the color contrast between the tumblers' body and lid, and the style line—that appear in its trade dress description in this complaint. *Imagen Brands*, 2017 WL 2199012, at *5; *Magnum Solace*, 2017 WL 5515910 at *5; (Compl., Dkt. 1, at 5–6). And in both cases, the Court found that the "whole collection of elements" alleged to comprise YETI's trade dress was plausibly nonfunctional. *Magnum Solace*, 2017 WL 5515910, at *5; *Imagen Brands*, 2017 WL 2199012, at *5. Just as the facts alleged in those cases were sufficient to meet YETI's pleading requirements, so too are they sufficient here.

As for Takeya's second argument, its premise—that YETI's drinkware trade dress simply copies the functional elements of preexisting drinkware—overstates the similarities between YETI's products and preexisting products. 7-11's Big Gulp™ is not made of stainless steel, it has no style line, and it has a different lid. (Mem. Mot. Dismiss, Dkt. 12, at 1). The Starbucks tumblers depicted in Takeya's motion have different lids, drink tabs, and contours. (*Id.*) Neither Starbucks tumbler has a style line, and the tumbler that appears to be shaped like the YETI 20 oz. tumbler is made of visibly distinct materials. (*Id.*). Each of these products has features that are not part of YETI's trade dress and lack features that are. The Big Gulp™ does not look remotely like the YETI products at issue in this case. (*Compare* Mem. Mot. Dismiss, Dkt. 12, at 1; Compl., Dkt. 1, at 5–6). It is unclear, then, how those drinkware products establish that the whole collection of features that allegedly comprise YETI's trade dress is essential and therefore functional. These products thus do not render

it implausible that YETI's trade dress is nonfunctional. More to the point, even though "functional features [such as the cupholder-sized lower portion of a 30 oz. tumbler] cannot be protected . . . a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." *Taco Cabana*, 932 F.2d at 1119. Even if Takeya is correct, its argument does no more than prove that certain features of YETI's trade dress are functional. Nothing in Takeya's argument is evidence that the combination of features that comprise YETI's trade dress are not a "particular arbitrary combination of functional features" that properly enjoys protection. *Id.* YETI has sufficiently alleged that its trade dress is nonfunctional.

## V. Trade Dress Dilution

YETI also asserts claims for trade dress dilution under state and federal law. (Compl., Dkt. 1, at 10, 13). Takeya argues that YETI has failed to state a claim under federal or state law because it has not adequately pleaded that its trade dress is famous. (Mot. Dismiss, Dkt. 11, at 3).

In order to pursue a dilution claim under either federal or state law, a plaintiff must allege that its trade dress is famous. 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner").[3] To determine whether a plaintiff has sufficiently alleged fame for purposes of federal claims, courts may consider "all relevant factors, including . . . (i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark . . . (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) [t]he extent of actual recognition of the mark; and (iv) [w]hether the mark was registered . . . ." *Id.* at § 1125(c)(2)(A)(i)–(iv).[4]

---

[3] Texas law imposes the same requirement, albeit with a different geographic scope. Tex. Bus. & Com. Code § 16.103(a) (requiring a plaintiff to allege that its trade dress is "widely recognized by the public throughout this state or in a geographic area in this state").

[4] Likewise, Texas law directs courts to consider similar factors. Tex. Bus. & Com. Code § 16.103(b)(1)–(4) (listing factors such as "the duration, extent, and geographic reach of the advertisement and publicity of the mark in [Texas]"; the

14

YETI alleges that it has "extensively and continuously promoted and used [its trade dress] in the United States and in Texas." (Compl., Dkt. 1, at 3). Through that "extensive and continuous use," YETI alleges that its trade dress "has become famous and a well-known indicator of the origin and quality of YETI's drinkware products" in the United States and Texas. (*Id.* at 13). YETI alleges that because of the "use, advertising, and sales" of its drinkware, along with "the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous." (*Id.* at 7). The Court found substantially similar allegations sufficient to survive motions to dismiss in both *Imagen Brands* and *Magnum Solace*. *Imagen Brands*, 2017 WL 2199012, at *8–9; *Magnum Solace*, 2017 WL 5515910 at *7.

Takeya argues that proving fame is "a very high standard" and that YETI has pleaded "no factual details" that would establish the Lanham Act's factors. (Mem. Mot. Dismiss, Dkt. 12, at 23, 26). Having already considered and rejected that argument, *Magnum Solace*, 2017 WL 5515910, at *7, the Court has no cause to decide differently here. Takeya also argues that YETI's dilution claims "cannot be evaluated" because YETI's complaint does not "identify with precision" the alleged trade dress. (Mem. Mot. Dismiss, Dkt. 12, at 27). For the reasons already discussed, the Court finds that YETI has articulated its trade dress with sufficient particularity. Finally, Takeya argues that YETI's dilution claims fail because YETI has not adequately alleged that its trade dress is nonfunctional. For the reasons already discussed, the Court finds that YETI has sufficiently alleged that its trade dress is nonfunctional.

## VI. Misappropriation and Unjust Enrichment

Finally, YETI asserts claims for common-law misappropriation and unjust enrichment. (Compl., Dkt. 1, at 17–20). On the premise that YETI has not adequately pleaded elements of its trade dress claims—such as likelihood of confusion or secondary meaning—Takeya argues that

---

"amount, volume, and geographic extent of sales"; the "extent of actual recognition of the mark"; and "whether the mark is registered").

15

YETI has failed to state a claim for each of these causes of action. (Mot. Dismiss, Dkt. 11, at 2–3; Mem. Mot. Dismiss, Dkt. 12, at 22–24). Because Takeya's arguments for dismissal of these causes of action are derivative of its arguments concerning YETI's trade dress, the Court rejects them for the same reasons it rejected YETI's arguments for dismissing YETI's trade dress claims.

## VII. Conclusion

For these reasons, the Court **GRANTS** Takeya's Motion to Take Judicial Notice, (Dkt. 14), and **DENIES** Takeya's Motion to Dismiss, (Dkt. 11).

**SIGNED** on March 9, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE